488 A.2d 955

Cornelius MASON

v.

**STATE of Maryland.**

**No. 53, Sept. Term, 1984.**

Court of Appeals of Maryland.

March 6, 1985.

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COLE, Judge.

The issue we must decide in this case is whether the double jeopardy protection against successive prosecutions for the same offense bars the appellant's conviction of conspiracy to distribute controlled dangerous substances (CDS).

The facts are not in dispute. On September 16, 1982, Cornelius B. Mason was charged in Baltimore County under two criminal informations (82–CR–3029 and 82–CR–3030) with various CDS offenses that occurred on August 13 and 14, 1982. Criminal information 82–CR–3029, which contained four counts, charged Mason with the following offenses that allegedly occurred on August 14, 1982: (1) possession with intent to distribute a CDS, to wit, cocaine; (2) possession of a CDS, to wit, cocaine; (3) conspiracy to

distribute a CDS, to wit, cocaine; and (4) a handgun offense in violation of Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 36B. The other criminal information (82–CR–3030) charged him with other violations that allegedly occurred on the preceding day, August 13, 1982. This particular three count information charged Mason with: (1) unlawful distribution of a CDS, to wit, cocaine; (2) possession with intent to distribute a CDS, to wit, cocaine; and (3) possession of a CDS, to wit, cocaine.

On November 17, 1982, the Circuit Court for Baltimore County accepted Mason's guilty plea to count one under criminal information 82–CR–3029 (possession with intent to distribute a CDS, to wit, cocaine). In exchange for his guilty plea, the State agreed to enter a *nolle prosequi* on the remaining counts under the two criminal informations, including count three of criminal information 82–CR–3029 (conspiracy to distribute a CDS, to wit, cocaine). The trial court subsequently sentenced Mason to three years' imprisonment.

Approximately four months later, Mason was tried in the Circuit Court for Baltimore City on a nine-count conspiracy indictment charging him with offenses allegedly stemming from the same purchasing and transporting of controlled dangerous substances between Baltimore County and Baltimore City on August 13–14, 1982. This indictment charged Mason with three heroin related offenses, three marijuana related offenses, and three cocaine related offenses. The trial court denied Mason's motion to dismiss the Baltimore City indictment on double jeopardy grounds. Mason then entered a guilty plea on count one (conspiracy with intent to distribute a CDS, to wit, heroin) and count seven (conspiracy to distribute a CDS, to wit, cocaine). The trial court accepted the pleas and imposed a three year sentence on count one, which was to run concurrent to the three year sentence he received in Baltimore County. The trial court imposed no sentence on count seven.

The Court of Special Appeals vacated Mason's Baltimore City conviction on count seven (conspiracy to distribute a CDS, to wit, cocaine) on the basis of double jeopardy in an unreported per curiam opinion filed January 19, 1984. That court, however, refused to vacate Mason's conviction on count one (conspiracy with intent to distribute a CDS, to wit, heroin), reasoning that "[c]onspiracy to distribute heroin and conspiracy to distribute cocaine are different offenses since 'each offense requires proof of a fact which the other does not.'" (Citation omitted.) We granted certiorari to consider the issue presented.

## I

The fifth and fourteenth amendments to the United States Constitution,[1] as well as the common law of this State, prohibit placing an accused twice in jeopardy for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980); *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979). In *Parks v. State, supra,* we discussed the rationale and the three major constitutional protections associated with double jeopardy:

The basic premise for enforcing the prohibition is to prevent the State from making repeated attempts to convict an individual, thereby subjecting him to the hazards of trial, embarrassment, expense, and anxiety as well as enhancing the possibility that even if innocent, he may still be found guilty. In accordance with this premise the United States Supreme Court and this Court have applied certain constitutional guarantees protecting the accused against unwarranted retrial.

These guarantees consist of constitutional protection against (1) a second prosecution for the same offense

---

1. The fifth amendment provides in pertinent part that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" This principle applies to the states by virtue of the fourteenth amendment. *See Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717 (1969).

after acquittal; (2) a second prosecution for the same offense after conviction; (3) and multiple punishment for the same offense.

*Id.* 287 Md. at 14, 410 A.2d at 600; *see Ohio v. Johnson,* — U.S. ——, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Shaw,* 282 Md. 231, 383 A.2d 1104 (1978); *Cousins v. State,* 277 Md. 383, 354 A.2d 825, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976). The second constitutional protection enumerated in the above passage "serves 'a constitutional policy of finality for the defendant's benefit[,]' " *Brown v. Ohio, supra,* 432 U.S. at 165, 97 S.Ct. at 2225, 53 L.Ed.2d at 194 (quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971) (plurality opinion), and protects the accused "from attempts to secure additional punishment after a prior conviction and sentence[.]" *Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194.

In this case, Mason claims that he was denied the benefit of this particular constitutional protection. In support of his claim, Mason contends that the *nolle prosequi* of the conspiracy count in return for his guilty plea in Baltimore County barred any further prosecution of that offense. We agree.

Our cases make clear that a *nolle prosequi* is a bar to any further prosecution under that charging document or count. A *nolle prosequi,* however, is not an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count. *Curley v. State,* 299 Md. 449, 459–60, 474 A.2d 502, 507 (1984); *Hooper v. State,* 293 Md. 162, 167–68, 443 A.2d 86, 89–90 (1982); *State v. Moulden,* 292 Md. 666, 673, 441 A.2d 699, 702–03 (1982); *Ward v. State,* 290 Md. 76, 84, 427 A.2d 1008, 1012 (1981). As Judge Eldridge explained in *Curley v. State, supra,* "[n]ormally

the effect of a nol pros is as if the charge had never been brought in the first place." *Id.* 299 Md. at 460, 474 A.2d at 507 (emphasis supplied). Thus, the State may in some circumstances reinstitute the prosecutions under a new charging document after the entry of a *nolle prosequi* on the former charging document or count.

▪ The *nolle prosequi* has a different effect, however, when the prosecutor and defendant enter into a binding plea agreement under which the defendant enters a guilty plea in exchange for the entry of *nolle prosequi* on the remaining charges. Once the court accepts the defendant's guilty plea and the defendant complies with the terms of that agreement, the State is barred from any further prosecution on the charges so nol-prossed. In these circumstances the State cannot recharge the defendant under a new charging document or new count with any offense it previously nol-prossed. We therefore consider the *nolle prosequi,* under these circumstances, as tantamount to a dismissal of that charge. *See Fleeger v. State,* 301 Md. 155, 162, 482 A.2d 490, 494 (1984); *State v. Brockman,* 277 Md. 687, 700, 357 A.2d 376, 384 (1976) (State precluded from withdrawing plea bargain where withdrawal is unfair or inequitable to the defendant; consequently, State cannot prosecute defendant on charges nol-prossed in accordance with plea agreement); *Magrogan v. State,* 56 Md.App. 289, 292–93, 467 A.2d 784, 785 (1983) (*nolle prosequi* entered on housebreaking indictment as part of a plea agreement is effectively tantamount to dismissal because the State cannot reinstitute the charges as long as the defendant complies with the terms of the agreement).

▪ In the case *sub judice,* Mason and the State entered into a plea agreement that was accepted by the Circuit Court for Baltimore County. In accordance with this agreement Mason entered a guilty plea to the first count under 82–CR–3029 (possession with intent to distribute a CDS, to wit, cocaine) in return for the State's promise to nol-pros the remaining counts under the two criminal informations,

one of which charged him with conspiracy to distribute cocaine. Mason complied with his obligation under the plea agreement by pleading guilty, and he began to serve his three year sentence. Consequently, the State was thereafter barred from recharging him on the offenses it nol-prossed in a new charging document. Simply put, any further prosecution under those nol-prossed counts violated the rule against double jeopardy.

## II

Despite the above, the State insists that conspiracy to distribute cocaine and conspiracy to distribute heroin constitute separate offenses and thus may be separately prosecuted without contravening the double jeopardy clause. In support of its argument, the State places heavy reliance upon the Supreme Court's decisions in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Based on these cases the State concludes that the double jeopardy clause acts as no impediment to these successive prosecutions. Because of the State's heavy reliance upon *Albernaz* and *Blockburger* it is necessary to examine those cases in detail.

The "required evidence" or *"Blockburger"* test is the established test for determining whether two offenses are sufficiently distinguishable to permit successive prosecutions. *Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194; *Whack v. State,* 288 Md. 137, 141–42, 416 A.2d 265, 267 (1980), *cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Brooks v. State,* 284 Md. 416, 419–21, 397 A.2d 596, 597–98 (1979); *Newton v. State,* 280 Md. 260, 266–68, 373 A.2d 262, 265–66 (1977); *Cousins v. State,* 277 Md. 383, 388–89, 354 A.2d 825, 829, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); *Thomas v. State,* 277 Md. 257, 266–67, 353 A.2d 240, 246–47 (1976). We articulated this test in *Thomas* in the following language:

The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes. And of course if both statutes have exactly the same elements, the offenses are also the same within the meaning of the prohibition against double jeopardy, and successive prosecutions are barred.

*Id.*

The Supreme Court articulated this test in a seminal 1932 decision that involved the violation of two separate narcotics statutes. *Blockburger v. United States, supra.* In that case, a federal statute forbade the sale of any prohibited drug except in or from the original stamped package (26 U.S.C. § 692) while another federal statute forbade the sale of these drugs except pursuant to a written order of the person to whom the drug is sold (26 U.S.C. § 696). The defendant was convicted under both statutes and he argued on appeal that because there was only a single sale there was but one offense for which only a single penalty could be imposed. The Supreme Court disagreed, reasoning that although the defendant violated both statutes by the one sale, he nonetheless committed two offenses under the required evidence test. Justice Sutherland, writing for a unanimous Court, cast the test in the following terms: "The applicable rule is that, where the same act or transaction constitutes a violation of *two distinct statutory provisions,* the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (emphasis supplied).

Nearly forty years later the Supreme Court was again faced with the issue of whether the imposition of consecutive sentences for the violation of two separate drug statutes contravened the double jeopardy clause of the fifth amendment. *Albernaz v. United States, supra.* The two statutes involved were 21 U.S.C. § 846 (conspiracy to distribute marijuana) and 21 U.S.C. § 963 (conspiracy to import marijuana), which are parts of different subchapters of the Comprehensive Drug Abuse Prevention and Control Act of 1970. In applying the *Blockburger* test, the *Albernaz* Court concluded that each statute required proof of a fact that the other does not and, consequently, these statutes proscribe separate statutory offenses the violations of which can result in the imposition of consecutive sentences. According to the *Albernaz* Court, Congress intended to impose multiple punishment because the two conspiracy statutes are directed to separate evils presented by drug trafficking: importation and distribution of marijuana. *Albernaz v. United States, supra,* 450 U.S. at 343, 101 S.Ct. at 1144, 67 L.Ed.2d at 284. Relying upon *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Court in *Albernaz* stated that in cases such as this the dispositive question is whether Congress intended to authorize separate punishments for the two crimes. When it so intends, the imposition of multiple punishments does not violate the Constitution.

In light of the discussion above, the State characterizes *Albernaz* as "indistinguishable" from the case *sub judice* and argues that both *Albernaz* and *Blockburger* sanction successive trials by virtue of the numerous statutes involved in this appeal. We disagree.

At the most basic level *Albernaz* and *Blockburger* each involve two separate congressionally enacted statutes. By these statutes Congress sought to punish what it believed were separate evils presented by drug trafficking. The State attempts to extend this same logic to this case by pointing to various sections of Maryland's Controlled Dangerous Substances Act (Act). Md.Code (1957, 1982 Repl.

Vol., 1984 Cum.Supp.), Art. 27, §§ 277, 279, 286(a)(1). This line of reasoning, however, is misplaced. First, the State fails to direct us to any separate statutory conspiracy offenses enacted by the General Assembly that are similar in nature to the two separate federal conspiracy statutes involved in *Albernaz.* Second, and more basic, the State fails to grasp that this case does not involve the violation of a statute, much less two statutes. Rather, this case deals only with the single violation of the common law misdemeanor of criminal conspiracy. To make this point clear, and to illustrate the substantial flaws in the State's reasoning, we find it necessary to review briefly the crime of conspiracy.

■■■■ Our cases have consistently and repeatedly defined criminal conspiracy as the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means.[2] *See, e.g., Gardner v. State,* 286 Md. 520, 523, 408 A.2d 1317, 1319 (1979); *Archer v. State,* 145 Md. 128, 146–47, 125 A. 744, 750–51 (1924); *Lanasa v. State,* 109 Md. 602, 607, 71 A. 1058, 1060 (1909); *State v. Buchanan,* 5 H. & J. 317, 352–60 (1821). The essence or gist of criminal conspiracy is an unlawful agreement. The agreement is the crime, and the crime is complete without any overt act. *See Gardner v. State, supra,* 286 Md. at 524, 408 A.2d at 1319; *Lanasa v. State, supra,* 109 Md. at 607–08, 71 A. at 1060. Although the agreement need not be a formal transaction involving meetings and communications, there must nonetheless be a meeting of the minds reflecting a unity of purpose and design. *See Seidman v. State,* 230 Md. 305, 322, 187 A.2d 109, 119 (1962), *cert. denied,* 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963); *Jones v. State,* 8 Md. App. 370, 377, 259 A.2d 807, 812 (1969); *see also* Marcus,

---

**2.** Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 38, sets forth the punishment for conspiracy. This statute provides: "The punishment of every person convicted of the crime of conspiracy shall not exceed the maximum punishment provided for the offense he or she conspired to commit."

*Conspiracy: The Criminal Agreement in Theory and in Practice,* 65 Geo.L.J. 925, 950 (1977) (discussing agreement aspect of criminal conspiracy). It therefore becomes necessary to analyze the nature of the agreement to determine whether there is a single conspiracy or multiple conspiracies. W. LaFave & A. Scott, *Handbook on Criminal Law* § 61, at 460 (1972). Ordinarily, a single agreement to engage in criminal activity does not become several conspiracies because it has as its purpose the commission of several offenses. Therefore, under Maryland common law, irrespective of the number of criminal goals envisioned by a single criminal agreement, the conspirator is usually subject to but one conspiracy prosecution. *See generally* P. Marcus, *Prosecution and Defense of Criminal Conspiracy Cases* §§ 4.01 to .02 (1984) (discussing scope of conspiracy).

An application of these principles demonstrates that a defendant who distributes a number of controlled dangerous substances in accordance with a single unlawful agreement commits but one crime: common law conspiracy. It is irrelevant that a number of controlled dangerous substances are involved in the single conspiracy. A conspiracy remains one offense regardless of how many repeated violations of the law may have been the object of the conspiracy. A simple example of the State's reasoning reveals the sophistry inherent in its argument. For instance, were we to accept the State's argument, a defendant involved in a single conspiracy to distribute ten Schedule I narcotic drugs could be subject to ten separate prosecutions under Md.Code (1957, 1982 Repl.Vol.), § 286(a)(1) without contravening the double jeopardy proscription against successive prosecutions. This reasoning, coupled with artful pleading, would permit the State to fragment one conspiracy into several conspiracies on the basis of the number of controlled dangerous substances distributed. As a result, the number of prosecutions for conspiracy would always turn upon the number of prohibited drugs distributed. We reject this line of reasoning.

Mason suggests that the Supreme Court's analysis in *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), represents the more appropriate approach. In that case the defendants were indicted on seven counts, each charging a conspiracy to violate several federal tax laws. The government conceded that the defendants had only a single agreement to commit the offenses. In holding that there could be but one conspiracy conviction under the general federal conspiracy statute, although the conspiratorial agreement had many objectives, the *Braverman* Court observed:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

*Id.* at 53, 63 S.Ct. at 102, 87 L.Ed. at 28. Although *Braverman* involved a single statutory offense rather than a common law offense, we find persuasive the reasoning applied by the Supreme Court in that case.[3] *See generally Brown v. Ohio, supra,* 432 U.S. at 169, 97 S.Ct. at 2227, 53 L.Ed.2d at 196 ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units").

---

**3.** We observe that the Braverman Court distinguished *Blockburger v. United States, supra,* on the basis that the latter involved a single act that violated two statutes while the former involved successive acts that violated a single penal statute. It is important to note that the Albernaz Court distinguished Braverman on this very basis, thereby signifying the continued vitality of Braverman's single statute double jeopardy clause analysis. *See also American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946) (distinguishing Braverman on the basis that it involved a single conspiracy described in separate counts that were charged under a general conspiracy statute, while American Tobacco involved the violation of two separate penal provisions under the Sherman Act).

In this case the conspiracy was based upon a single unlawful combination between two or more persons to transport controlled dangerous substances (heroin and cocaine) between Baltimore County and Baltimore City. The State concedes as much in the Agreed Statement of Facts. Therefore, contrary to the State's assertions, the one agreement gave rise to only a single conspiracy. We therefore conclude that Mason's second conviction was barred by the double jeopardy protection against successive prosecutions for the same offense.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND REMANDED TO THAT COURT TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.