Horace L. CLAIBORNE, Sr., et al.

v.

Herbert CAHALEN, et al.

Civ. No. Y–85–2979.

United States District Court,
D. Maryland.

May 28, 1986.

Alfonso N. Pearson, Marlow Heights, Md., for plaintiffs.

Paul A. McGuckian, Co. Atty., Bruce P. Sherman, Sr. Asst. Co. Atty., and Richard D. Caplan, Asst. Co. Atty., Rockville, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This lawsuit was originally brought by Horace L. Claiborne, Senior, and Ethel Claiborne, as the parents and next friends of their son, Horace L. Claiborne, Junior ("Claiborne"). The Claibornes alleged several constitutional causes of action under 42 U.S.C. § 1983 and a host of state diversity claims arising from the allegedly unlawful arrest and prosecution of their son by officers of the Montgomery County, Maryland, Police Department. The complaint named as defendants, in their individual and official capacities, three Montgomery County police officers; Bernard Crooke, Chief of the Montgomery County Police; and Charles W. Gilchrist, Montgomery County Executive, as well as the Montgomery County Police Department and the State of Maryland.

By Order dated February 24, 1986, the Court granted plaintiffs leave to substitute Claiborne as the real party in interest, and leave to amend the complaint to allege the specific customs or policies of the Montgomery County Police Department that led to his arrest. Plaintiffs were also given leave to amend the complaint to allege personal involvement in those customs or policies on the parts of supervisory defendants Crooke and Gilchrist. The Court granted partial summary judgment for defendants Crooke and Gilchrist as to the Maryland tort claims brought against them in their individual capacities, and dismissed plaintiffs' Eighth Amendment and intentional infliction of emotional distress claims in their entirety.

On March 3, the defendants filed a consolidated motion for summary judgment as

to the claims against the three policemen, and as to all other claims outside the permitted amendments. On March 19, Claiborne filed a second amended complaint,[1] and on April 1, he filed an opposition to the March 3 summary judgment motion. The supporting materials provided with the defendants' motion established that probable cause existed for Claiborne's arrest. Plaintiff failed to provide supporting materials in his response to show that a genuine issue of material fact remains as to whether plaintiff's arrest was lawful. The Court finds that all of plaintiff's constitutional claims fall because plaintiff's arrest was lawful. Plaintiff's diversity claims under Maryland state law also fall as a result.

THE PROBABLE CAUSE DETERMINATION

Federal Rule of Civil Procedure 56 provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In their March 3 motion for summary judgment, the defendants attached as exhibits the sworn interrogatories of police officer defendants Herbert C. Cahalen, Richard Klocko, and Harry Bailey; the complete deposition testimony of plaintiff; and a sworn supplemental affidavit by officer Cahalen verifying the authenticity of a copy of his original police report. Plaintiff did not provide any supporting materials with his opposition to the March 3 summary judgment motion. The Court has reviewed the material submitted, resolving all inferences from that material against the defendants, and finds that probable cause existed for the arrest of the plaintiff.

Cahalen's original police report and his sworn answers to the interrogatories propounded by plaintiff are consistent. Cahalen's account of the arrest, detailed in his answer to plaintiff's interrogatory number ten, reads as follows:

On May 16, 1985, at approximately 0410 hours, I was on routine patrol in Silver Spring, Maryland, when I observed two individuals, later identified as Horace Claiborne and Tracey Keith standing to the rear of the 7–11 store located at 7901 Eastern Avenue. Both subjects were engaged in conversation and were looking around in a nervous manner. After approximately one minute, Keith walked to the side of the 7–11 out of my view, with what appeared to be what was later identified as a gas mask, sitting on the top of his head. Claiborne continued to look around and upon seeing me, walked away from the 7–11. After seeing me, Claiborne was observed looking back toward the 7–11 as if he was speaking to Keith, then started walking away from the store towards Georgia Avenue. I approached Claiborne in the parking lot while in my vehicle and observed Keith in the walkway along the side of the 7–11. I approached Claiborne and inquired as to what he was doing and where he was from. Claiborne replied that he was waiting for his friend who had gone to the 7–11 to buy food and that he was from D.C. During the conversation, I observed that Claiborne had a bulge under his black leather jacket on the right side. I advised Claiborne to move on and then went to check the 7–11 where the other individual was last seen heading towards.

I drove to the front of the 7–11 where Keith was seen watching me from around the front outside corner of the 7–11. He was not seen inside the store during the two minutes that I was observing it before returning to the rear of the store. Only the clerk was in the store. As I drove around to the rear, Keith was observed slowly walking from the back side of the 7–11 store. He then

---

1. The second amended complaint dropped the State of Maryland as a named defendant.

walked more quickly when he saw me. I observed him throw what was later identified as a black gas mask to the ground under a car. Keith continued to walk across the parking lot where he met Claiborne who was waiting.

I approached both subjects and advised them to place their hands on the front of the police cruiser. Keith was excited and appeared to be attempting to get into a position to run. He was also very vocal.

Back-up officers arrived at this point and a pat down for weapons was conducted. I patted down Claiborne and Klocko patted down Keith. Officer Klocko found an open knife in the jacket pocket of Keith. Claiborne was found to have a gas mask bag under his jacket causing the jacket to bulge. I also recovered a gas mask from the street from behind the 7–11 where Keith had thrown it. Both the mask and bag were U.S. military issue.

Both subjects were placed under arrest for conspiracy to rob the 7–11 and rogue and vagabond.

Cahalen's supplemental affidavit attests that it is "common knowledge in the Montgomery County Police Department that the area of the 7–11 located at 7901 Eastern Avenue is a high crime area," and that the gas mask he recovered from Keith "is constructed in such a manner that when the gas mask is worn over the head and on the face, it shields the entire face making identification of the wearer extremely difficult, if not impossible."

Claiborne's deposition does present innocent explanations for his presence at the 7–11 at four in the morning, and how he and Keith came into possession of the gas mask and bag, but it does not contradict Officer Cahalen's account of the events that led up to the arrest in any material way. Claiborne's deposition testimony confirmed:

—that Claiborne and Keith were together in the back of the 7–11 parking lot at approximately four a.m. (deposition at p. 44);

—that Keith walked toward the store while Claiborne remained behind (p. 44–45);

—that Keith had the mask with him as he approached the store (p. 45);

—that officer Cahalen approached Claiborne and told him to move on (p. 49–50);

—that Claiborne had the bag to the gas mask under his jacket (p. 53);

—that Claiborne walked towards the District of Columbia, but lingered waiting for Keith (pp. 50–51);

—that officer Cahalen then went around to the front of the 7–11 (p. 51);

—that Keith came around the side of the store, saw officer Cahalen, and threw the mask down beside a car because he was frightened (p. 54);

—that the police officers found a knife in Keith's possession when he was patted down (p. 73).

Claiborne's testimony did contradict Cahalen's in a few unimportant particulars. He testified that Keith was carrying the gas mask when he walked toward the front of the 7–11, instead of wearing it on top of his head. And Claiborne testified that he did not start walking away from the 7–11 until after officer Cahalen approached him. Resolving all inferences in Claiborne's favor, the Court will accept his version of the events where it contradicts the account of officer Cahalen.

At one point during his deposition, Claiborne also appeared to contradict Cahalen's account in a potentially important detail. Under questioning from the defendants' attorney, Claiborne testified that Cahalen told Claiborne and Keith they were under arrest before the pat down searches occurred. Deposition at pp. 55–56. That testimony was less then clear, however. Later, under questioning from his own attorney, Claiborne clearly testified that officer Cahalen searched him before placing him under arrest. Deposition at p. 77.

In light of Claiborne's unequivocal testimony later in the deposition, his counsel's acceptance of that testimony without asking further questions about it, and counsel's failure to address the issue in his

opposition to the motion for summary judgment, the Court is not sure that Claiborne is entitled to an inference that a genuine dispute of fact exists on this point. But even assuming *arguendo* that plaintiff is entitled to an inference that the pat down searches occurred after arrest, the Court finds that probable cause existed.

"[There is a large difference] between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." *Brinegar v. United States*, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879 (1949). Probable cause exists when the facts and circumstances within the police officer's knowledge are sufficient to warrant a man of reasonable caution in the belief that the defendant has committed a crime. *Id.* at 338 U.S. 175–76, 69 S.Ct. at 1310–11.

Plaintiff was arrested for two offenses: "Rogue and vagabond" under Article 27 § 490, Md.Ann.Code, and common law conspiracy to rob. The rogue and vagabond statute encompasses three different offenses, but the only one applicable to this case requires the possession of offensive weapons "under circumstances from which may be presumed an intent feloniously to assault any person . . . ." Because for purposes of this motion the Court will assume that officer Cahalen arrested plaintiff before a search of Keith revealed an offensive weapon, the defendants have failed to demonstrate at this stage that probable cause existed to arrest plaintiff for that crime.

Conspiracy is a common law offense in Maryland, defined by the Maryland courts as "the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means." *Mason v. State*, 302 Md. 434, 444, 488 A.2d 955 (1985) (citations and footnote omitted). While there must be a meeting of the minds "reflecting a unity of purpose and design," *Id.*, "the agreement need not be a formal transaction involving meetings and

communications." *Id.* No covert act is required. *Id.*

Robbery is also a common law offense in Maryland, defined as the taking with intent to steal and carrying away of the personal property of another from his person by the use of violence or by putting in fear. *Williams v. State*, 302 Md. 787, 793–79, 490 A.2d 1277 (1985).

From the undisputed facts before the Court, probable cause existed to arrest the plaintiff for conspiracy to rob. Officer Cahalen could reasonably infer an agreement between Claiborne and Keith after observing them talking together at the rear of the 7–11, after seeing Claiborne linger waiting for Keith, and after seeing Keith walk quickly away from him to rejoin Claiborne.

Cahalen could reasonably infer that this agreement was criminal in nature from observing two young men meeting at the rear of a store in a high crime area at four in the morning, and seeing one of the young men approach the store carrying a mask that would conceal his identity. The mask would also indicate an intent to rob, because if Keith had intended to steal surreptitiously he would have had no reason to conceal his identity, and the mask would have drawn attention.

At his deposition, Claiborne himself admitted that those circumstances alone would lead to a suspicion that the two men intended to rob the store. When asked why he didn't accompany Keith inside the store, he said:

I mean why I'm going to go there if I don't have no money, and then, you know —anyway, he had the gas mask in his hand, you know. And then by me if I had went in there the man behind the thing [counter] is going to think he was trying to rob him or something.

Deposition at p. 45.

But the most telling evidence in support of Cahalen's probable cause determination came in addition to the circumstances which Claiborne himself acknowledged were suspicious. Cahalen observed Keith

watching him from "the front outside corner of the 7–11." As Cahalen drove around to the rear of the store Keith walked quickly away from Cahalen and threw the mask to the ground beside a car. Keith's acts were indicative of a conspiracy to a reasonable man in Cahalen's position.

Cahalen thus had probable cause to arrest Claiborne and Keith, and the pat downs were lawful searches incident to arrests. Once the searches revealed an offensive weapon in Keith's possession, probable cause existed to charge Claiborne with violating the rogue and vagabond statute. As an accomplice, Claiborne was properly chargeable with having the knife in his possession. *Downes v. State,* 11 Md.App. 443, 450, 274 A.2d 663 (1971); *Wright v. State,* 222 Md. 242, 247, 159 A.2d 636 (1960), *cert. denied, sub nom., Isaacs v. Maryland,* 364 U.S. 920, 81 S.Ct. 283, 5 L.Ed.2d 259.

## I. THE EFFECT OF A FINDING OF PROBABLE CAUSE ON PLAINTIFF'S FEDERAL CLAIMS

### A. Fourth Amendment Claim

Claiborne alleges that the actions of the defendants violated "his right to security of person and freedom from arrest, except upon probable cause ... guaranteed by the Fourth Amendment...." A finding of probable cause eliminates this claim, because "there is no cause of action for 'false arrest' under Section 1983 unless the arresting officer lacked probable cause." *Street v. Surdyka,* 492 F.2d 368, 372–373 (4th Cir.1974); *cf. Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Even assuming, *arguendo,* that the record is insufficient at this stage to support a finding of probable cause, defendants would still be entitled to summary judgment on this claim. As public officials performing discretionary functions, police officers are entitled to "good faith" immunity under § 1983. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that public officials are shielded from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." What officer Cahalen observed was so suspicious that a reasonable person in his position could not have known that he was violating Claiborne's rights by arresting him, even if a judge or jury second-guessed the determination of probable cause at a later time.

Police officers Bailey and Klocko are entitled to the same immunity, and the record also clearly demonstrates that Bailey and Klocko did not take any actions which were the proximate cause of Claiborne's alleged injuries. Their answers to plaintiff's interrogatories reveal that they did not play any part in Claiborne's arrest save for arriving on the scene as back-up units. Plaintiff has failed to demonstrate that an issue of fact remains for trial as to the personal liability of Bailey and Klocko.

### B. Fifth and Fourteenth Amendment Liberty Claims

Plaintiff alleges that he was denied his liberty without due process of law, in violation of the Fifth and Fourteenth Amendments. These claims are merely other ways of pleading "false arrest" under Section 1983, and because probable cause existed for Claiborne's arrest, defendants are entitled to summary judgment on these claims as well. *Street v. Surdyka, supra.*

Again, assuming *arguendo* that the record is insufficient to establish probable cause at this time, defendants are still entitled to good faith immunity, and plaintiff has failed to demonstrate that an issue of fact remains for trial as to the personal involvement and liability of officers Bailey and Klocko. Furthermore, Maryland law tort claims for false arrest and false imprisonment provide Claiborne with an adequate remedy at state law for random, intentional deprivations of liberty by police officers. *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983), reheard en banc, 748

F.2d 229 (4th Cir.1984) affirmed on other grounds, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *cf. Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### C. First Amendment Claim

■ At paragraph 19 of his second amended complaint, Claiborne alleges that "Defendants, in falsely arresting plaintiff for walking on the public streets of a community consisting of white citizens constitutes a violation of Plaintiff's constitutional rights under the First Amendment, freedom of expression and freedom of association." Plaintiff nowhere alleges that the rogue and vagabond statute or Maryland's common law of conspiracy violate the First Amendment. Accordingly, this claim, too, is predicated on a "false arrest," and must fall.

### D. Sixth, Ninth, and Tenth Amendment Claims

■ In paragraph 13 of his second amended complaint, Claiborne alleges that defendants deprived him of "his right to be informed of the true nature and cause of the accusation against him, guaranteed by the Sixth Amendment...." This claim appears to follow Claiborne's allegations that he was arrested because of his race and sex, and that he was not arrested lawfully on the charges of conspiracy to rob and rogue and vagabond. To the extent that this claim depends on allegations of unlawful arrest, defendants are entitled to summary judgment for reasons already stated. To the extent that this claim depends upon allegations of racist motives in violation of the equal protection clause, defendants are entitled to summary judgment for the reasons stated in the Equal Protection Claim section below. In any event, the facts alleged in the complaint fail to state a claim under any theory of the Sixth Amendment of which the Court is aware.

■ Similarly, plaintiff's complaint contains the delphic allegation that defendants violated "his rights reserved are [sic] retained under the Ninth and Tenth Amendment...." The facts alleged in the complaint fail to state causes of action under any theories of the Ninth or Tenth Amendments of which the Court is aware.

### E. Equal Protection Claim

The heart of plaintiff's second amended complaint appears to be paragraph 16. There plaintiff alleges that he was arrested primarily because of his race—Claiborne is black—and sex. That paragraph also alleges that officer Cahalen acted "with the implied and express consent of his superiors and he acted pursuant to the customs, practice and usage of the police policies, rules, regulations and procedures. At all times herein all acts against Plaintiff by defendants were characterized by discriminatory policies and practices and motivated by the same. Said policies, customs and/or practices as established by prior incidents of unlawful police misconduct of October, 1983 and May, 1984 involving misuse of police power which acts are known to and have been condoned and acquiesced in by Montgomery County." Another section of the complaint alleges that Montgomery County and the individual supervisory defendants negligently hired officer Cahalen despite his incompetence, and negligently retained him on the force and failed to reprimand or rebuke him for his "prior misuse of police power." The "prior misuse" is unspecified. Paragraph 22.

■ The Court's finding of probable cause for Claiborne's arrest ends any inquiry into the allegedly improper motives of the individual defendants, and robs Claiborne of standing to challenge the allegedly discriminatory policies of Montgomery County and the supervisory defendants in their individual and official capacities.[2]

**2.** In its February 24 Order, the Court granted leave to amend to allege specific facts concerning the individual involvement of defendants Gilchrist and Crooke in the policies that led to plaintiff's arrest, and warned that if plaintiff did not allege sufficient facts, his claims against Gilchrist and Crooke in their individual capacities would be dismissed. After searching the

"*Harlow v. Fitzgerald, supra,* rejected the inquiry into state of mind in favor of a wholly objective standard." *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Under *Harlow,* the only test at the summary judgment stage, *cf. Vizbaras v. Prieber,* 761 F.2d 1013 (4th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986), is whether the conduct of the defendants violated established constitutional rights "of which a reasonable person would have known," *Id.,* a test the defendants have already passed. Because officer Cahalen had probable cause to arrest the plaintiff, the defendants objectively did not violate Claiborne's rights, no matter how improper their motives.

Although such a result may appear harsh, the advantages of such a standard are dramatically illustrated by this case. The Supreme Court concluded, in *Harlow* that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow, supra,* 457 U.S. at 818–819, 102 S.Ct. at 2738–39. All that plaintiff has done in this second amended complaint is to make bare allegations of racism. During his deposition, Claiborne testified that the defendants had not said anything that would lead him to believe the arrest was racially motivated. Deposition at pp. 71–72. Plaintiff has not responded to the summary judgment motions by defendants with any factual material as required by Rule 56. He has not even specified the prior incidents of police misconduct mentioned in the complaint. Yet if an objective test did not apply, this Court might be forced to hold

that officer Cahalen was not entitled to summary judgment because of the allegations of racist intent in the complaint.

 Even assuming, *arguendo,* that the record is insufficient to support a finding of probable cause, defendants Bailey and Klocko would be entitled to summary judgment because of their lack of involvement. So would defendants Montgomery County Police Department and Bernard Crooke and Charles Gilchrist in their individual and official capacities. Crooke and Gilchrist previously submitted affidavits indicating that neither they nor the County police department had any discriminatory policies regarding arrest, or any policies encouraging police officers to make illegal arrests. Plaintiff has utterly failed to meet those affidavits with factual material as required by Rule 56.

## II. PLAINTIFF'S DIVERSITY CLAIMS UNDER MARYLAND LAW

Plaintiff filed diversity claims under Maryland law alleging false arrest and imprisonment, battery, libel and slander, malicious prosecution, and negligent hiring and retention of police officers.

### A. *Montgomery County*

 The Maryland courts have held fast to the doctrine of sovereign immunity, insisting that absent an express legislative waiver of immunity, a county is not liable for any action arising out of the performance of its "governmental" functions. The operation of a police force is a governmental function. *Quecedo v. Montgomery County,* 264 Md. 590, 596–97, 287 A.2d 257

---

second amended complaint, it is clear that plaintiff has not alleged any personal involvement by Crooke and Gilchrist in the arrest of the plaintiff, beyond broad allegations of civil conspiracy. After the Court's previous warning, such vague allegations of conspiracy will not support causes of action against Crooke and Gilchrist in their individual capacities.

Construing the second amended complaint liberally, plaintiff alleges that Crooke and Gilchrist condoned racist police practices by failing to discipline previous police misconduct, and by negligently retaining an incompetent police officer (defendant Cahalen) on the force. Because the Court finds that probable cause existed for Claiborne's arrest, he does not have standing to sue the County or defendants Crooke and Gilchrist in their individual capacities. Defendant has not alleged that the discriminatory policies of the Montgomery County Police Department and defendants Crooke and Gilchrist place him in any danger of being arrested unlawfully in the future. Accordingly, Crooke and Gilchrist are entitled to summary judgment in their individual capacities.

(1972). The Court is not aware of any express waiver of governmental immunity by Montgomery County. Accordingly, the County is entitled to summary judgment on all the Maryland law tort claims against it.

### B. *Bailey and Klocko*

 In their answers to plaintiff's interrogatories, defendants Bailey and Klocko indicated that they did not touch the plaintiff (Claiborne alleged battery), did not lodge the public charges that plaintiff alleges were slanderous and libelous, did not institute any prosecutions against plaintiff (malicious or otherwise), and did not arrest or imprison the plaintiff. Plaintiff has failed to meet the factual material submitted by Klocko and Bailey, and has failed to show that any issues remain for trial as to their personal involvement and liability.

### C. *Cahalen*

 Under Maryland law, officer Cahalen is entitled to qualified immunity for discretionary acts performed in the course of his duty. *Brewer v. Mele*, 267 Md. 437, 298 A.2d 156 (1972). In order to overcome Cahalen's qualified immunity, plaintiff must make an affirmative showing of actual malice on the part of Cahalen. *Davis v. Muse*, 51 Md.App. 93, 441 A.2d 1089 (1982). Plaintiff alleges malice in his complaint.

In support of his motion for summary judgment, officer Cahalen attached an affidavit asserting that "I had no ill will, or evil motive, or any improper purpose in mind when I arrested the plaintiff on May 16, 1985. The arrest was based upon my own observations and experience which supported my probable cause determination to make the arrest." The Court has already held that Cahalen had probable cause to make the arrest, and that his actions were thus objectively reasonable.

The Maryland courts have not defined actual malice clearly. It is possible that malice may range from "the mere inference of malice permitted to be drawn from the want of probable cause," *Brewer v. Mele, supra,* 267 Md. 445–446, 298 A.2d 156, to an "affirmative showing of ill will, improper motivation, or evil purpose." *H & R Block v. Testerman*, 275 Md. 36, 43, 338 A.2d 48 (1975). *See* discussion in *Hector v. Weglein*, 558 F.Supp. 194, 208–09 (D.Md.1982). The Maryland courts appear to lean toward the latter, more stringent definition. *Id.; Leese v. Baltimore County*, 64 Md.App. 442, 497 A.2d 159, 179 (1985), *cert. denied*, 305 Md. 106, 501 A.2d 845. Here, in any event, plaintiff is not entitled to an inference of malice, because there is no want of probable cause, and plaintiff has failed to make an affirmative showing of ill will, improper motivation, or evil purpose to counter the materials submitted by defendants.

Cahalen had probable cause to arrest and imprison Claiborne. The alleged battery was a touching incidental to arrest (pat down search and handcuffing), and was not abusive. In his deposition, Claiborne testified that Cahalen did not use excessive force against him, or physically hurt him in any way. Deposition at pp. 56–57. Cahalen initiated the prosecution against Claiborne, and lodged the allegedly libelous and slanderous public charges against him, with probable cause and in good faith, and thus enjoys immunity for those activities.

While the defendants' supporting materials make it clear that Cahalen did not act with actual malice at the time of arrest, a malicious prosecution claim encompasses a prosecution begun in good faith, but continued in bad faith. *Brewer v. Mele, supra,* Defendants' supporting materials stop at the time frame of the arrest and plaintiff's brief detention. But the complaint does not allege that any of the defendants acquired knowledge after the time of Claiborne's arrest that would have changed a reasonable belief that Claiborne had committed the crimes with which he was charged.

Accordingly, defendants are entitled to summary judgment on all claims against them, and this lawsuit must be dismissed in its entirety.