Thomas L. WENTZ, Appellant,

v.

Edward J. KLECKER, Milton V. Wisland
and Barbara C. Braun, Appellees.

Thomas L. WENTZ, Appellee,

v.

Edward J. KLECKER, Milton V. Wisland
and Barbara C. Braun, Appellants.

Nos. 82–2480, 82–2517.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1983.

Decided Nov. 16, 1983.

Bruce E. Bohlman, Murray, Olson, Larivee, Bohlman & Engen, Ltd., Thomas M. Lockney, University of N.D., School of Law, Grand Forks, N.D., for Thomas L. Wentz.

Robert O. Wefald, Atty. Gen. by David L. Peterson, Sp. Asst. Atty. Gen., Bismarck, N.D., for Edward J. Klecker and Milton V. Wisland.

Gregory W. Tschider, Jr., Bismarck, N.D., for Barbara C. Braun.

Before LAY, Chief Judge, and HENLEY and BROWN *, Senior Circuit Judges.

LAY, Chief Judge.

Thomas Wentz brought this action under 42 U.S.C. § 1983 (1976 & Supp. V 1981) alleging that defendants violated his constitutional rights to free speech and due process under the First and Fourteenth Amendments, respectively. The District Court for the District of North Dakota, Northeastern Division, the Honorable Bruce M. Van Sickle, presiding judge, found in favor of the defendants and dismissed the complaint. We affirm.

*Facts*

Thomas Wentz was hired by Barbara Braun, the director of the Developmental Disabilities Protection and Advocacy Project (P & A) to be the first resident-advocate at the Grafton School for the mentally retarded. The resident-advocacy program was created by Braun; Milton V. Wisland, the superintendent of Grafton School; and Wentz. The program involved a cooperative effort by Wisland and Wentz to provide assistance and information in furtherance of the residents' rights. Braun compensated and supervised Wentz.

Wentz began his work in early November, 1979. Some weeks into the job, without notice to the administration, Wentz invited John Strand, the editor of the Grafton newspaper, to tour the school. During the next month, Wisland and Wentz had several confrontations over Wentz's implementation of the advocacy program. On December 26, Wentz met with Wisland who expressed disapproval of the way Wentz was doing his job. Later in the conversation, Wisland threatened to fire Wentz. Wentz then threatened to send to the governor tapes of conversations between Wisland and Strand if Wisland had him fired.[1] However, on later reflection, Wentz apologized for the threat.

After this meeting, Wentz contacted Braun who scheduled a meeting of herself, Wentz, and Wisland to settle the dispute. The meeting took place on January 14, 1980. Wentz appeared but asked that the meeting be postponed to January 16 because he was not able to have legal counsel with him. On January 15, Braun received a call from Wentz's attorney cancelling the January 16 meeting.

On January 17, Wentz and Braun met in Grand Forks, North Dakota. Wentz informed Braun that he could no longer continue with his contract. He presented terms for resignation that Braun found unacceptable.[2] Shortly after this meeting, Braun sent a letter to Wentz terminating him. The stated reasons were that Wentz "failed to submit reports; to contact P & A staff; to return books, and files, and records; and otherwise to perform duties pur-

---

* The Honorable Bailey Brown, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. Wentz later learned that Strand had made no tapes.

2. Wentz offered to resign on the condition that he receive $3–5,000 plus a press conference. Braun refused to approve the press conference, but indicated that a settlement for wage entitlements might be possible.

suant to his contract." Order of Trial Court at 5–6, *Wentz v. Klecker,* Civ. No. A2–81–80 (D.N.D. Nov. 10, 1982).

After sending the termination notice, Braun received a letter from Wentz containing several requests, one of which was that Wentz receive a hearing before the State Council on Developmental Disabilities. Braun denied this request on the advice of her attorney that Wentz was an independent contractor and hence was not entitled to a hearing. Wentz then brought this action alleging that his discharge was related to speech activities and that he was entitled to a hearing before his discharge.

*First Amendment*

■ The evidence established that Wentz was hired by Braun, the director of the Advocacy Project, a state agency. Wentz received compensation from funds distributed through the state. He was under the supervision of Braun, an employee of a state agency, and was required to report to her. These facts from the record support the district court's conclusion that Wentz was a state employee. *See Sweeney v. Bond,* 669 F.2d 542 (8th Cir.), *cert. denied, sub. nom. Schenberg v. Bond,* —— U.S. ——, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982).

■ Wentz claims that because he was a state employee, the First Amendment prohibits his discharge in retaliation for speech activities. It is true that public employees may not be "compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). However, an employee need not:

> be reinstated whenever constitutionally protected conduct plays a "substantial" part in the employer's decision to terminate. Such a rule would require reinstatement of employees that the public employer would have dismissed even if

the constitutionally protected conduct had not occurred and, consequently, "could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." [3]

*Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979) (*quoting Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977)).

As stated in *Givhan,* the test is:

> [O]nce the employee has shown that his constitutionally protected conduct played a "substantial" role in the employer's decision not to rehire him, the employer is entitled to show "by a preponderance of the evidence that it would have reached the same decision as to [the employee's] re-employment even in the absence of the protected conduct."

*Givhan* 439 U.S. at 416, 99 S.Ct. at 697 (*quoting Mt. Healthy* 429 U.S. at 287, 97 S.Ct. at 576).

■ The district court found that nonspeech related activities prompted Wentz's discharge. We find that the evidence clearly supports this finding. As Braun stated in her letter, Wentz's contract was rescinded for his failure to submit reports; to contact the P & A staff; to return books, files, and records; and otherwise to perform duties pursuant to the contract. More specifically, the record establishes that Wentz was terminated for various acts, including bringing a newspaper editor on campus without permission; making threats to Wisland; failing to attend meetings to resolve the differences between himself and Wisland; indicating that it was impossible to continue his contract; and supposed failure to do advocacy work such as research and preparation of reports. The district court's findings establish that

---

**3.** In determining whether the employee's conduct is constitutionally protected, courts first ask whether the speech activity is of public concern, *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and then balance the employee's speech interests with the employer's interest in promoting "efficiency, loyalty, and departmental morale," *Hughes v. Whitmer,* 714 F.2d 1407 at 1418 (8th Cir. 1983).

Wentz would have been terminated even had he not engaged in the allegedly speech-related activities of inviting the newspaper editor to campus and disagreeing with his supervisors as to treatment for one of the inmates.

*Due Process*

■ Wentz argues that the due process clause of the Fourteenth Amendment entitled him to a hearing prior to his discharge. The district court found that Wentz had a one year contract for employment that constituted a property interest. Before the state can deprive a party of this interest, notice and some form of a hearing must be provided. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although meetings were scheduled, no form of a hearing was provided before Wentz's discharge. This was a violation of Wentz's due process right.

Braun contends that she terminated Wentz without a hearing based on the advice of counsel that Wentz was not a state employee. Because, as the district court found, Wentz was a state employee, this advice to Braun was erroneous. The question now presented is whether Braun is entitled to qualified, or good faith, immunity in a suit against her personally for damages.

The district court found that "Braun was sincere in believing that her action would not cause a deprivation of Wentz's due process rights" and that "it was reasonable for Braun to rely on the advice of the P & A attorney." The court therefore held that Braun was not liable for any damages Wentz may have incurred from the denial of a hearing.

■ Constitutional rights exist independently of an official's personal knowledge of them. State officials may not deny a party due process out of ignorance of the law. However, state officials must be afforded some protection from personal liability for discretionary actions taken in the course of their official duties. "[P]ublic officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Thus, a qualified immunity is afforded executive officials acting within the scope of their duties. *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974).

■ To be immune from personal liability, an executive official must act in good faith. This defense originally consisted of both an objective and subjective component. *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). However, in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court modified the test to include only an objective component. The Court held that this was necessary to protect government officials from the disruptive effects and costs of discovery and trial. *Id.* 457 U.S. at 817–18, 102 S.Ct. at 2738–39. Under the *Harlow* test, officials are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738; *see also Green v. White,* 693 F.2d 45 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).

■ We agree with the district court that the plaintiff has not met the *Harlow* standard. Based on the advice of experienced counsel, Braun believed that Wentz was an independent contractor. As an independent contractor, Wentz was not clearly entitled to a hearing under state law. While reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably, in the instant case the unique employment situation of Wentz was such that Braun acted in good faith in soliciting and following the advice of her attorney. The law here was not so plain as to support a conclusion that Braun violated "clearly established" rights of which "a reasonable person would have known."

We reiterate that state employees may not rely on their ignorance of even the most esoteric aspects of the law to deny individuals their due process rights. Enforcement mechanisms such as administrative hearings and civil injunctive actions are available to insure those property and liberty rights guaranteed to citizens by the laws and constitution of this country. The existence of those forms of relief are not modified by the decision in the instant case. We hold only that state officials acting within the scope of their duties and in good faith are immune from damage actions against them personally.

The order of the district court is affirmed.