John SANDUL, Robert Sandul, and Devona Sandul, Plaintiffs–Appellants,

v.

Timothy LARION, Sgt. Robert Stevenson, and Sgt. Lawrence Little, Defendants–Appellees.

No. 95–2050.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1996.

Decided July 23, 1997.

**1252**

Frank G. Becker (argued and briefed), Becker & Van Cleef, Southfield, MI, for Plaintiffs–Appellants.

Gail P. Massad (argued and briefed), Edward E. Salah, Joseph Nimako, Cummings, McClorey, Davis & Acho, Livonia, MI, for Defendants–Appellees.

Before: KENNEDY, JONES, and DAUGHTREY, Circuit Judges.

JONES, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. KENNEDY, J. (pp. 1257–59), delivered a separate dissenting opinion.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Plaintiff John Sandul appeals the district court's granting of summary judgment to Defendants in this civil rights action brought under 42 U.S.C. § 1983. Sandul claimed that Defendants falsely arrested him and used excessive force. The district court granted summary judgment to Defendants, reasoning that Defendant Officer Larion had probable cause to arrest Sandul. We hold that the district court erred in granting summary judgement to Defendant Larion. We therefore reverse and remand this case to the district court for further proceedings consistent with this opinion.

## I.

This is the second appeal of this case to this court. A synopsis of the substantive facts will suffice for purposes of this appeal.

On August 3, 1990, Officer Timothy Larion of the Livonia Police Department, while on patrol duty, was talking with a group of abortion protesters who were picketing outside a local restaurant. While Larion was talking with the protesters, a truck drove by at a high rate of speed. The passenger in the truck, Plaintiff John Sandul, leaned out of the vehicle as it passed by the abortion protesters and shouted "f—k you," and extended his middle finger to the group. The car in which Sandul was traveling was separated from the protestors by a lane of traffic, a grassy median strip, and a sidewalk.

Believing that Sandul's conduct violated the city of Livonia's disorderly conduct ordinance, Larion began pursuing the truck until it stopped in front of Sandul's home. Larion requested identification, and Sandul replied that his identification was inside his house. Larion then informed Sandul that he was under arrest for trying to start a riot. Sandul, not believing that Larion was serious, turned and walked toward his house. Larion followed Sandul to the porch and grabbed Sandul's arm in an attempt to prevent him from entering the house. Larion maintains that Sandul swung at him and missed, pulled away from him, and entered the house. Larion further contends that Sandul began yelling obscenities at him from inside the house and that Sandul emerged from the house carrying a butcher knife, threatening to kill Larion.

Officer Larion called for backup assistance. Among the responding officers were Defendants Sergeant Stevenson and Sergeant Little. Ultimately, Sandul was arrested and charged with disorderly conduct and felonious assault [1].

---

**1.** There are three relevant Livonia ordinances. It is unclear which ordinance Sandul was charged with violating. The initial police report did not note the specific ordinance relied upon. The Defendant's brief cites Livonia Ordinance 9.40.010 (Disorderly Persons-Designated Acts Prohibited) and 9.40.040 (Acts Constituting Breach of Peace and Disorderly Conduct). The Plaintiff's brief cites 9.22.030 (Indecent and Improper Conduct).

Following a trial in state court, Sandul was acquitted of the disorderly conduct charge. A mistrial was declared on the felonious assault charge. On March 30, 1993, Sandul filed a complaint in Michigan's Wayne County Circuit Court against Defendants Officer Larion, Sergeant Stevenson, and Sergeant Little, asserting claims under 42 U.S.C. § 1983. Sandul alleged violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments and violations of analogous state laws. Specifically, Sandul alleged unlawful arrest, unlawful entry, and excessive force. The action was removed to the District Court for the Eastern District of Michigan. Defendants then filed a Motion to Dismiss and/or a Motion for Summary Judgment for all of claims involved. The district court granted summary judgement to Defendants on the false arrest claim for felonious assault. The court denied Defendants' summary judgment motion on the excessive force claim. Because the false arrest claim was Sandul's primary claim, Sandul then requested a voluntary dismissal of all other claims (including the excessive force claim), so that an immediate appeal could be taken. The action was dismissed with prejudice, and Sandul then appealed to this court.

On appeal, this court affirmed in part, and reversed in part, holding that: 1) the district court did not err in granting summary judgment to the Defendants on Sandul's claim of false arrest for attempted felonious assault; 2) the district court erred by failing to address Sandul's claim of false arrest based on his initial arrest for disorderly conduct; 3) the district court did not err in granting summary judgment to Defendants Stevenson and Little for Sandul's claim of false arrest because these Defendants did not participate in Sandul's initial arrest for disorderly conduct; 4) the district court did not err in

dismissing Sandul's unlawful entry claim, because Sandul's behavior at his home constituted an immediate threat to the arresting officers; and 5) the dismissal of Sandul's false arrest claim did not render the excessive force claim an involuntary adverse judgment. *Sandul v. Larion*, 94–1233, 1995 WL 216919, at *3–4 (6th Cir. Apr.11, 1995). This court further found that the district court had misled the Plaintiffs' attorney as to the effect of dismissal with prejudice. *Id.* at *6 n. 5. As a result, the court reversed the dismissal of the excessive force and state law claims. *Id.* at *6.

On remand, the district court granted summary judgment to Larion concluding that Livonia's disorderly conduct ordinance did not rise to the level of being "so flagrantly unconstitutional" that any person of reasonable prudence would be bound to see its flaws. *See Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). The district court also found that Larion had probable cause to arrest Sandul for violating the disorderly conduct ordinance. Thus, the court held that there was no violation of Sandul's First Amendment rights and that even if the ordinance was unconstitutional, Larion was entitled to qualified immunity. In addition, the district court dismissed *without* prejudice Sandul's excessive force claims.

## II.

On appeal, Sandul contends that the district court erred in granting summary judgment to Larion and that the district court erred in dismissing the excessive force claim.

█ We review a district court's grant of summary judgment *de novo*. *Front Row Theatre, Inc. v. American Mfr.'s Mutual Ins.*

Ordinance 9.40.010 provides: It is unlawful to be a disorderly person, as hereinafter defined within this section: ... F. Immoral behavior—
1. Any person who uses any indecent, insulting, or immoral language in the presence of others....
Ordinance 9.40.040 provides: Any person who makes or assists in making any noise, disturbance, trouble or improper diversion, or any rout or riot by which the peace and good order of the City are disturbed, shall be guilty of a breach of the peace and disorderly conduct.

Ordinance 9.22.030 provides: It is unlawful for any person to follow, annoy, molest, disturb or insult by voice, conduct or actions any child under eighteen years of age, or any woman; to induce, coax, persuade or induce by threat any child under eighteen years of age or any woman to enter any vehicle or conveyance, or to go in or upon any public alley, street, park or private property or place; or to engage in any indecent, improper, immoral or obscene conduct, behavior or actions.

*Cos.,* 18 F.3d 1343, 1346 (6th Cir.1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A.

■ We begin by confronting the second issue, the dismissal of Sandul's excessive force claim. Sandul cannot appeal the order dismissing the excessive force claim because the dismissal was without prejudice. Such a dismissal is not a final judgment, and thus, no appeal is permitted. *See Laczay v. Ross Adhesives,* 855 F.2d 351, 354 (6th Cir.1988). The granting of summary judgment on the false arrest claim, however, constitutes a final judgment and is reviewable. We now turn to the first issue, whether Larion is entitled to qualified immunity for the arrest of Sandul.

### B.

#### 1.

We state initially that Sandul does not challenge the constitutionality of the Livonia ordinances. Rather, Sandul argues that Officer Larion violated his constitutional rights by falsely arresting Sandul while he was exercising his right to free speech and that because Officer Larion should have known that he was violating Sandul's First Amendment rights he is not entitled to qualified immunity.

■ Government officials are generally entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In order to assert a violation of a "clearly established" right and defeat a qualified immunity defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,*

483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* To prove that a right was clearly established a claimant can draw from either Supreme Court precedent, precedent from this court, or cases from other courts which "point unmistakably to the unconstitutionality of the conduct and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Mumford v. Zieba,* 4 F.3d 429, 432–33 (6th Cir.1993).

■ We utilize an "objective reasonableness" standard to determine whether a government official would believe that a right is clearly established. *Long v. Norris,* 929 F.2d 1111, 1115 (6th Cir.1991). "[T]he objective reasonableness test focuses on whether an official, given the facts that the official knew or reasonably should have known about the situation, should have known that his or her particular conduct would not pass scrutiny when applied to the law." *Id.*(citations omitted).

#### 2.

■ On appeal, our task is limited to a determination of whether Sandul's rights were "clearly apparent" at the time of his arrest. *Mumford,* 4 F.3d at 432. As a preliminary matter, it is necessary to determine whether Sandul's actions were protected speech.

It is a well-established that "absent a more particularized and compelling reason for its actions, [a] State may not, consistently with the First and Fourteenth Amendments, make the simple public display ... of [a] four-letter expletive a criminal offense." *Cohen v. California,* 403 U.S. 15, 26, 91 S.Ct. 1780, 1789, 29 L.Ed.2d 284 (1971). In *Cohen,* the words of individual expression were also "f—k you." The *Cohen* Court explained why such language is entitled to First Amendment protection although it appears to have little redeeming value:

> while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is never-

theless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

*Id.* at 25, 91 S.Ct. at 1788. Thus, the use of the "f-word" in and of itself is not criminal conduct.

First Amendment protection is very expansive. The only type of language that is denied First Amendment protection is "fighting words." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). *Chaplinsky* defined "fighting words" as:

> those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.... [S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value ... that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Id.* at 572, 62 S.Ct. at 769. The fighting words exception is very limited because it is inconsistent with the general principle of free speech recognized in our First Amendment jurisprudence. *See Texas v. Johnson,* 491 U.S. 397, 408–09, 109 S.Ct. 2533, 2542, 105 L.Ed.2d 342 (1989) (quoting *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949)) ("[A] principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'"); *Knight Riders v. City of Cincinnati,* 72 F.3d 43, 46 (6th Cir.1995) ("Fighting words is a small class of expressive conduct that is likely to provoke the average person to retaliate, and thereby cause a breach of the peace"). Fighting words are words that are likely to cause an average person to react thus causing a breach of the peace. *Chaplinsky,* 315 U.S. at 574, 62 S.Ct. at 770. They are words which an onlooker would consider a "direct personal insult or an invitation to exchange fisticuffs." *Johnson,* 491 U.S. at 409, 109 S.Ct. at 2542.

Sandul's words and actions do not rise to the level of fighting words. The actions were not likely to inflict injury or to incite an immediate breach of the peace. Sandul's vehicle was traveling at a high rate of speed on the opposite side of the street, a considerable distance away from the protesters to whom the language was directed. Sandul was in a moving vehicle; the entire incident was over in a matter of seconds. There is no evidence in the record that any abortion protester was offended, nor did anyone acknowledge Sandul's behavior with the exception of Officer Larion. There was no face-to-face contact between Sandul and the protestors. Thus, it is inconceivable that Sandul's fleeting actions and words would provoke the type of lawless action alluded to in *Chaplinsky.* Sandul's action was not fighting words and therefore was speech protected by the First Amendment.

In 1990 when Sandul was arrested for his use of the "f-word," it was clearly established that speech is entitled to First Amendment protection with the exception of fighting words. *Chaplinsky* had been decided over fifty years earlier and the *Cohen* decision, which prohibited criminal prosecution for the use of the same expletive, had been decided in 1971. Moreover, *Johnson,* which further delineated the fighting words exception, had been decided just one year prior to Sandul's arrest. It was clearly established at the time of Sandul's arrest that his actions were within the contours of his First Amendment rights.

Applying the objective reasonableness standard, a reasonable officer should have known that the words and gestures employed by Sandul amounted to protected speech. Well-established Supreme Court precedents demonstrate Sandul's constitutional right to free speech, with the exception of fighting words. *See, e.g., Cohen, supra* (holding that absent a compelling and particularized reason, the First and Fourteenth Amendments preclude States from prohibiting the public display of a four-letter expletive); and *Chaplinsky, supra* (holding that the only types of speech denied First Amendment protection are words which by their very utterance

inflict injury or incite an immediate breach of the peace). These cases should leave little doubt in the mind of a reasonable officer that the mere words and gesture "f—k you" are constitutionally protected speech. " '[S]tate employees may not rely on their ignorance of even the most esoteric aspects of the law to deny individuals their [constitutional] rights.' " *Long,* 929 F.2d at 1115 (quoting *Wentz v. Klecker,* 721 F.2d 244 (8th Cir. 1983)). As a reasonable officer, Larion should have known that the words and gestures used by Sandul were constitutionally protected, and that under the First Amendment, the disorderly conduct ordinance could only apply to "fighting words."

### 3.

■ Larion argues that he had probable cause to arrest Sandul because he reasonably believed that Sandul had violated the Livonia disorderly conduct statute. A police officer is permitted to make an arrest if there is probable cause to believe that the arrestee has committed or is committing an offense. *See Adams v. Williams,* 407 U.S. 143, 148–49, 92 S.Ct. 1921, 1924–25, 32 L.Ed.2d 612 (1972); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), sets forth the standard for an arrest based on probable cause:

> "probable cause" to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense.

*Id.* at 37, 99 S.Ct. at 2632; *see also, Johnson v. Estate of Laccheo,* 935 F.2d 109, 112 (6th Cir.1991) (holding that a relevant inquiry in determining if qualified immunity is available is whether a reasonable officer would have believed that the arrest was lawful).

Larion did not have probable cause to believe that Sandul had violated any of the three Livonia ordinances at issue (as discussed above, it is somewhat unclear which statute Sandul was charged with violating). His actions did not constitute fighting words

and thus amounted to protected speech. Sandul's actions were protected by the First Amendment. Such protected speech cannot serve as the basis for a violation of any of the Livonia ordinances at issue.

### C.

■ Larion argues that Sandul has no cognizable First Amendment claim because he did not challenge the constitutionality of the statute under which he was arrested. Because Sandul never challenged the constitutionality of the underlying statutes, Larion maintains that his claim is merely a Fourth Amendment claim of false arrest and was appropriately dismissed by the district court. In support of this position, Larion relies on *Claiborne v. Cahalen,* 636 F.Supp. 1271 (D.Md.1986).

In *Claiborne,* the plaintiff brought a § 1983 action, alleging unlawful arrest and prosecution by Maryland's Montgomery County police. *Id.* at 1273. The plaintiff was arrested pursuant to Montgomery County's "Rogue and Vagabond" statute. *Id.* at 1276. The plaintiff did not challenge the statute itself, but rather challenged his arrest on the basis that he was denied his right to freedom of expression and freedom of association guaranteed to him by the First Amendment. *Id.* at 1278. The court held that because the plaintiff did not challenge the "Rogue and Vagabond" statute, the claim of First Amendment protection was premised on a false arrest theory; thus, the claim was invalid. *Id.*

We reject the reasoning of the *Claiborne* court. Sandul's failure to challenge the relevant Livonia ordinances does not obliterate his inalienable First Amendment rights. Sandul's First Amendment rights are guaranteed, absolute, and protected unless his speech falls within an exception; such is not the case here. While the Livonia ordinances are presumptively valid as they have not been challenged, Sandul's § 1983 claims are unaffected by his failure to challenge the constitutionality of the ordinances.

### III.

We conclude that Larion is not entitled to qualified immunity because his actions violat-

ed Sandul's clearly established First Amendment rights of which a reasonable officer should have known. Accordingly, the judgment of the district court is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

KENNEDY, Circuit Judge, dissenting.

The District Court, relying upon *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), held that defendant Larion was entitled to qualified immunity in attempting to arrest plaintiff for violation of two sections of Livonia's disorderly person ordinance. *DeFillippo* holds that where an officer arrests under an ordinance as to which there is no controlling precedent that the ordinance is unconstitutional and there is probable cause to believe that the terms of the ordinance have been violated, he is entitled to qualified immunity. In *DeFillippo*, the ordinance was held unconstitutional after the arrest was made. The Court stated:

> On this record there was abundant probable cause to satisfy the constitutional prerequisite for an arrest. At that time, of course, there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance. A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional.
>
> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—*with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.* Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Id.* at 37–38, 99 S.Ct. at 2632 (emphasis added).

Here, we have an ordinance never declared unconstitutional and the absence of any Michigan case law which has held a similar ordinance unconstitutional. Indeed, plaintiff did not seek to challenge the constitutionality of the ordinance. The panel concludes that a reasonable officer would have known there was no probable cause to find a violation of the ordinance.

I agree with the District Court—that there was probable cause under the terms of the ordinance to arrest plaintiff. Defendant maintains that plaintiff was arrested under two sections of Livonia's disorderly persons provisions. These are as follows:

**9.40.010 Disorderly Persons—Designated Acts Prohibited.** It is unlawful to be a disorderly person, as hereinafter defined within the section:

. . . .

F. Immoral Behavior.

1. Any person who uses any indecent, insulting or immoral language in the presence of others,

. . . .

**9.40.040 Acts constituting breach of peace and disorderly conduct.** Any person who makes or assists in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace and good order of the city are disturbed, shall be guilty of a breach of the peace and disorderly conduct.

Arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. *DeFillippo*, 443 U.S. at 36, 99 S.Ct. at 2631; *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988). Larion testified he attempted to arrest Sandul for the obscene gesture and the "F" word. The language plus the gesture would seem to be at least insulting. Shouting "F— you" from a car at abortion protestors is arguably a disturbance.

Only if the ordinance is so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws is Officer Larion liable. I submit that the ordinance does not reach that level of unconstitutinality and indeed I do not

believe that the panel would find all its provisions unconstitutional.

The Court points to several cases which it holds would put the officer on notice that the ordinance was unconstitutional. Had defendant examined *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), in which the defendant had "f— the draft" printed on his jacket, he would find its holding in the last paragraph where the Court says

> It is, in sum, our judgment that, absent a more particularized and compelling reason for its actions, the State may not, consistently with the First and Fourteenth Amendments, make the simple public display here involved of this single four-letter expletive a criminal offense. Because that is the only arguably sustainable rationale for the conviction here at issue, the judgment below must be reversed.

*Id.* at 26, 91 S.Ct. at 1789. The Court's restrictive language relates its statement earlier in the opinion of what is not involved in the case.

> This Court has also held that the States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called "fighting words," those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction. *Chaplinsky v. New Hampshire*, 315 U.S. 568 [62 S.Ct. 766, 86 L.Ed. 1031] (1942). While the four-letter word displayed by Cohen in relation to the draft is not uncommonly employed in a personally provocative fashion, in this instance it was clearly not "directed to the person of the hearer." *Cantwell v. Connecticut*, 310 U.S. 296, 309 [60 S.Ct. 900, 906, 84 L.Ed. 1213] (1940). No individual actually or likely to be present could reasonably have regarded the words on appellant's jacket as a direct personal insult. Nor do we have here an instance of the exercise of the State's police power to prevent a speaker from intentionally provoking a given group to hostile reaction. *Cf. Feiner v. New York*, 340 U.S. 315 [71 S.Ct. 303, 95 L.Ed.

295] (1951); *Terminiello v. Chicago*, 337 U.S. 1 [69 S.Ct. 894, 93 L.Ed. 1131] (1949).

*Id.* at 20, 91 S.Ct. at 1785–86. The words used by defendant here were arguably directed as a personal insult.

Had the officer read *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), he would have found that

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Id.* at 571–72, 62 S.Ct. at 769. The Court then affirmed the constitutionality of a state statute with the following test for fighting words:

> The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight.... The English language has a number of words and expressions which by general consent are "fighting words" when said without a disarming smile.

*Id.* at 573, 62 S.Ct. at 770.

When he looked to the words which the Court found were not protected, he would find that defendant accused a police officer of being a "damned racketeer" and a "damned fascist." These words, the Court held, are likely to provoke the average person to retaliation and therefore cause a breach of the peace.

The panel finds that the "f" word and the finger are not fighting words because they were spoken from a moving vehicle and thus could not provoke lawless action. While they did not, they could have provoked one of the protestors to chase plaintiff's vehicle. As noted, they were at least insulting. As stat-

ed in *Texas v. Johnson*, 491 U.S. 397, 409, 109 S.Ct. 2533, 2542, 105 L.Ed.2d 342 (1989), fighting words are words which an onlooker would consider "as a direct personal insult or an invitation to exchange fisticuffs." While the ordinance here has its frailties, I cannot say it is so grossly and flagrantly unconstitutional that the officer was bound to see its flaws. I respectfully dissent.