**Shannon STRAUB, by and through her next friend and mother, Tina Miller, Plaintiff–Appellant,**

v.

**James KILGORE, Officer, Wilder Police; City of Wilder; St. Luke Hospital, Inc.; David Allen, M.D.; John Doe(s), Nurse 1; E. Krebs, R. N.; T.**

Theisen; Jane Doe(s), Sued as Jane Doe Nurses 1 and 2; John Doe(s), Security Guards 2 and 3, Defendants–Appellees.

No. 02–5542.

United States Court of Appeals, Sixth Circuit.

May 27, 2004.

Karen Nelson Moore, Circuit Judge, filed a dissenting opinion.

Michael J. O'Hara, Suzanne Cassidy, O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, KY, for Plaintiff–Appellant.

Michael P. Foley, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, Scott M. Powers, Lange, Quill & Powers, Newport, KY, David V. Kramer, Deters, Benzinger & Lavelle, Covington, KY, for Defendants–Appellees.

Before RYAN, MOORE, and ROGERS, Circuit Judges.

RYAN, Circuit Judge.

The plaintiff, Shannon Straub, brought an action under 42 U.S.C. § 1983, claiming that the defendants deprived her of her constitutional rights when she was arrested without probable cause and subjected to invasive medical procedures against her will. The district court granted summary judgment in favor of all defendants after concluding that the plaintiff's arrest was supported by probable cause, and that the defendants who performed the invasive medical procedures upon the plaintiff against her will did not act under color of law. Although we do not, by any means, suggest that the defendants handled this episode appropriately, we are unable to say that the district court erred in concluding that the defendants did not deprive the plaintiff of a right protected by the United States Constitution while acting under color of law. Therefore, we AFFIRM the judgment of the district court.

## I.

Shortly after midnight on April 17, 1999, the plaintiff, Shannon Straub, then 16 years old, and two girlfriends visited a condominium owned by another friend. Straub spent the night with her friends at the condominium and, on waking at 6:00 a.m., left the condominium to retrieve her backpack from her friend's car. When she tried to return to the condominium, Straub could not distinguish between the buildings and began ringing doorbells at random in order to find her friends. Concerned residents phoned the Wilder Police Department, complaining that a young, white female with blonde hair was ringing doorbells at the condominium complex and waking people up. Shortly thereafter, the defendant, James Kilgore, a police officer

for the City of Wilder, Kentucky, responded to the complaint. He observed Straub, who matched the description in the complaint given him by his dispatcher, and when he questioned her about her activities, she said that she was lost and had no identification. Kilgore tried, without success, to help Straub find the apartment where she had spent the night. For reasons that are not clear from the record, he was also unsuccessful in learning where Straub lived or where her mother could be located.

In his deposition, Kilgore stated that Straub was unsteady on her feet, her pupils were dilated, and her speech was slurred. He said he smelled a strong odor of marijuana and believed that Straub was giving evasive and inconsistent answers to his questions about her name and address, how she had arrived at the condominium complex, and whether she had been drinking or taking drugs. Kilgore testified that he suspected that Straub had recently used drugs or that she may have been involved in an accident and injured her head. Unable to locate anyone at the condominium complex who knew Straub, Kilgore transported her to the police station where he made numerous unsuccessful attempts to locate her mother. Eventually, he contacted a court designated worker from juvenile court who instructed him to take Straub to the hospital.

Kilgore took Straub to St. Luke Hospital where he asked the staff to determine whether she needed any medical attention. He told defendant Nurse T. Theisen that he suspected Straub had been using drugs and that she may have been involved in an accident. Straub was examined by defendant Dr. David Allen, who ordered a blood and urine test and instructed a nurse to have Straub undress and put on a hospital gown. When Straub refused to put on the gown, she was restrained and forcibly un-

dressed by two unnamed hospital security guards, two unnamed nurses, and the defendant nurses E. Krebs and Theisen. Officer Kilgore, apparently at the request of the nurses, assisted in attempting to restrain Straub. After Straub was restrained to an examining table with leather straps, Krebs catheterized her in order to obtain a urine sample for the tests Dr. Allen had ordered. An unnamed lab technician also took a blood sample from Straub, who tested positive for cannabis and benzodiazepine, or Valium. Hospital personnel released her from her restraints when her mother arrived to pick her up and take her home.

In her complaint, Straub alleged that the defendants violated her constitutional rights as guaranteed by the Fourth and Fourteenth Amendments by placing her under arrest without probable cause, confining her to the hospital, forcibly removing her clothing, and conducting invasive medical tests without her consent. On cross motions for summary judgment, the district court ruled in favor of the defendants and dismissed the complaint.

The district court held that Straub could not show that Kilgore arrested her without probable cause and dismissed the complaint as to him. The court also dismissed the claims against St. Luke Hospital, Dr. Allen, Krebs, Theisen, and the unnamed nurses and security guards because there was no showing that they acted under color of law and, therefore, were not subject to liability under 42 U.S.C. § 1983. Finally, the district court dismissed the claims against the City of Wilder because Straub presented no evidence that the City was responsible for any violation of Straub's federally protected rights. Straub now appeals the district court's judgment.

## II.

This court reviews a district court's decision to grant summary judgment *de novo*. *Watkins v. City of Southfield,* 221 F.3d 883, 886 (6th Cir.2000).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In reviewing the district court's grant of summary judgment, this court draws all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

## III.

Straub alleges that Officer Kilgore violated her constitutional rights when he arrested her because he did not have probable cause to believe that she had violated Kentucky law. Kilgore contends that he had probable cause to arrest Straub for

one or all of the following offenses: (1) criminal trespassing; (2) harassment; (3) disorderly conduct; and (4) providing a police officer with a false name or address.

To successfully maintain a claim under 42 U.S.C. § 1983, Straub must identify a right secured by the United States Constitution and a deprivation of that right by a person acting under color of law. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992). Accordingly, in an action brought under § 1983, the court must determine "whether the plaintiff has presented facts which, if proven, demonstrate that the defendant violated a constitutional right." *Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir.1997).

The Fourth Amendment requires that an arrest be supported by probable cause. *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001), *cert. denied,* 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). This standard permits an officer to make a warrantless arrest even for a misdemeanor, no matter how minor, so long as he has probable cause to believe that an offense has been committed. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Kentucky law adds another element to the probable cause standard by permitting an officer to makes a warrantless arrest for a misdemeanor only when the misdemeanor is committed in his presence. Ky.Rev.Stat. § 431.005(d) (2002). However, Kentucky's "in the presence" requirement is a state-provided right that is not grounded in the U.S. Constitution and that does not support a § 1983 claim. *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995). The Supreme Court has declined to answer the question whether the Fourth Amendment also has an "in the presence" requirement for misdemeanor arrests. *Atwater,* 532 U.S. at 340 n. 11, 121 S.Ct. 1536.

Kilgore alleges that he had probable cause to believe that Straub violated one or more of the following Kentucky statutes:

*Harassment:* Ky.Rev.Stat. § 525.070 (2002). "A person is guilty of harassment when with intent to harass, annoy or alarm another person he: ... (e) Engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

*Disorderly conduct:* Ky.Rev.Stat. § 525.060(1) (2002). "A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance or alarm, or wantonly creating a risk thereof, he: ... (b) Makes unreasonable noise[.]"

*Criminal trespass in the third degree:* Ky.Rev.Stat. § 511.080(1) (2002). "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises."

*Giving peace officer a false name or address:* Ky.Rev.Stat. § 523.110(1) (2002). "A person is guilty of giving a peace officer a false name or address when he gives a false name or address to a peace officer who has asked for the same in the lawful discharge of his official duties with the intent to mislead the officer as to his identity. The provisions of this section shall not apply unless the peace officer has first warned the person whose identification he is seeking that

giving a false name or address is a criminal offense."

Kilgore was dispatched to the condominium complex with the advice that there was a citizen complaint of a young woman randomly ringing doorbells at the condominium complex in the early morning hours and disturbing several residents. On arrival, Kilgore observed Straub, who matched the description given him by his dispatcher. Straub told Kilgore she was lost and that she had rung several doorbells at the complex. While these undisputed facts hardly reveal serious criminal behavior, they are sufficient to warrant a reasonable person to conclude that Straub's behavior amounted to harassment and disorderly conduct under Kentucky law.

Although Straub may have attempted to give Officer Kilgore what she thought was a legitimate explanation for her behavior, Officer Kilgore was not required to give such explanation any credence. As we stated in *Criss v. City of Kent*, 867 F.2d 259 (6th Cir.1988),

> [a] suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers are entitled to take into consideration in making the determination whether probable cause to arrest exists. A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.

*Id.* at 263 (citation omitted). "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Id.*

The district court correctly concluded that Straub's arrest was supported by probable cause that she committed a minor offense, although the court neglected to identify the crime. We note that in reaching this conclusion, the district court incorrectly resolved a factual dispute in favor of Kilgore, concluding that he observed Straub ringing a doorbell. The court's error was harmless, however, because whether the misdemeanor occurred in Kilgore's presence is not material to the issue of whether there was probable cause to arrest Straub. The district court erroneously stated that when a police officer makes a warrantless arrest for a misdemeanor, the Constitution requires that the misdemeanor take place in the officer's presence. While this may be a requirement under Kentucky law, it is not a federal constitutional requirement. *Pyles*, 60 F.3d at 1215.

## IV.

■ Straub further alleges that Kilgore, Dr. Allen, Krebs, Theisen, and the unnamed nurses and security guards violated her constitutional rights when they subjected her to invasive medical procedures against her will. Straub alleges that Kilgore and the hospital personnel were acting in concert to obtain evidence against her and, therefore, were acting under color of law. Officer Kilgore responds that there is no evidence that he requested or directed the medical tests that hospital personnel performed on Straub, and that he was merely responding to the request for help by the hospital personnel when he helped them restrain Straub in order that the medical procedures Dr. Allen ordered might be conducted.

Dr. Allen and the other hospital defendants claim that their conduct was based on independent medical judgment. They note that Straub resisted their efforts to evaluate her medical condition by initially refusing to talk to Dr. Allen or put on a

hospital gown. When Straub finally did speak to Dr. Allen, she told him that she had been involved in a motorcycle accident. She showed physical symptoms of drug use or a possible head injury and the hospital personnel additionally suspected that she may have been the victim of a date rape or other assault. Accordingly, both hospital practice and federal law, 42 U.S.C. § 1395dd (2003), required hospital personnel to conduct a thorough medical evaluation of Straub before releasing her, although there is no statutory requirement that an examination and evaluation be conducted against the patient's will and with the use of coercive force.

This, of course, is not a civil action for assault and battery, medical malpractice, or any other state tort. It is a claim under 42 U.S.C. § 1983. To successfully maintain a § 1983 action, a plaintiff must identify a right secured by the U.S. Constitution and a deprivation of that right by a person acting under color of law. *Russo*, 953 F.2d at 1042. This court has employed three tests to determine whether the conduct of private persons, such as the defendant hospital and its personnel, is fairly attributable to the state and is, therefore, under color of law: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship test. *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir.1996).

"When considering whether private action should be attributed to the state under the public function test, the court conducts a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003).

Under the symbiotic relationship test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992). In order to show state action, the state must be "intimately involved" with the challenged conduct. *Id.* The symbiotic relationship test is derived from *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), where the U.S. Supreme Court held that a private restaurant that was located in a municipally owned parking garage and that refused to serve minorities acted under color of state law because the relationship between the restaurant and the parking authority "confer[red] on each an incidental variety of mutual benefits." *Id.* at 724, 81 S.Ct. 856.

State action exists under the state compulsion test if the "state exercise[s] such coercive power or provide[s] such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.*

Employing these tests, we are unable to conclude that Straub has demonstrated that the hospital defendants acted under color of state law. First, Straub has made no showing that the hospital defendants were engaged in an action traditionally reserved to the state, and, therefore, she has failed to meet her burden of showing that the hospital defendants are state actors under the public function test. Second, with respect to the symbiotic relationship test, Straub has not identified a relationship with the state from which the hospital or its personnel benefitted. Finally, under the state compulsion test, Straub has presented no evidence that Kilgore or any other representative of the state coerced or encouraged the hospital

personnel such that their actions could be deemed to be those of the state.

In his motion for summary judgment, Officer Kilgore showed the district court that there was no evidence to support Straub's allegations that he restrained her for the purpose of conducting a criminal investigation; nor was there any evidence to refute his claim that he was merely acting at the direction of hospital personnel when he assisted them in restraining her. Similarly, we are satisfied that the hospital personnel properly supported their motions for summary judgment in the district court by showing that there was no evidence that would support a finding that they acted under color of law. Once Officer Kilgore and the hospital personnel made this showing to the district court, the burden shifted to Straub to demonstrate with "concrete evidence" that there was a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. We see no concrete evidence in the record that there was a genuine issue of material fact whether Officer Kilgore or the hospital personnel acted under color of state law when they restrained Straub. Therefore, the district court did not err in dismissing those portions of the complaint related to Straub's treatment at the hospital.

## V.

Because Straub has failed to show that she suffered a violation of her federally protected rights, either as a result of her arrest or during her treatment at St. Luke Hospital, there is no need to address her claim against the City of Wilder.

## VI.

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of the defendants.

KAREN NELSON MOORE, Circuit Judge, dissenting.

I respectfully disagree with the majority's conclusion that Officer Kilgore had probable cause to arrest Straub for violating Kentucky's harassment and disorderly conduct statutes. At the time the incident giving rise to this litigation occurred, it was clearly established that the Fourth Amendment requires arrests to be supported by probable cause. *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir.1997). "For probable cause to arrest to exist, the 'facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.' " *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir.2003). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995). Although probable cause does not require officers to have proof of every element of an offense, officers cannot ignore exculpatory evidence when determining whether probable cause exists. *Crockett v. Cumberland College*, 316 F.3d 571, 582 (6th Cir.2003); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000). In this case, there is evidence that Officer Kilgore knew of facts indicating that Straub did not violate Kentucky's harassment or disorderly conduct statutes.

Under the Kentucky Penal Code, "A person is guilty of harassment when with intent to harass, annoy or alarm another person he: ... (e) Engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person *and which serve no legitimate purpose.*" Ky.Rev.Stat. § 525.070 (emphasis added). As the majority points out, Straub told Officer Kilgore that she had

been ringing doorbells in order to locate the apartment where she was staying, which is clearly a legitimate purpose. Additionally, under the Kentucky Penal Code, "A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance or alarm, or wantonly creating a risk thereof, he: ... (b) Makes *unreasonable* noise." Ky.Rev.Stat. § 525.060 (emphasis added). The commentary to § 525.060 explains, "Subsection (1)(b) prohibits unreasonable noise. 'Reasonable' in this context depends upon the time, place, nature *and purpose of the noise.*" (emphasis added). Again, as the majority points out, Straub told Officer Kilgore that she had been ringing doorbells to locate the apartment where she was staying; such noise would have clearly been reasonable given Straub's stated purpose. I am not suggesting that a suspect can automatically negate probable cause by merely proffering a denial. But here, where there is little inculpatory evidence, an officer may not ignore a suspect's legitimate explanation for rather benign conduct.

Additionally, the evidence adduced thus far does not support Officer Kilgore's assertion that he had probable cause to arrest Straub for committing the offenses of criminal trespass in the third degree, in violation of Ky.Rev.Stat. § 511.080(1), or giving a peace officer a false name or address, in violation of Ky.Rev.Stat. § 523.110(1).

I am troubled by the prospect of allowing police officers to justify arrests after-the-fact based upon expansive readings of sweeping public nuisance statutes such as those involved in this case. I fear that this practice will give police officers carte blanche to arrest people for doing just about anything. Because I believe there is a genuine issue of material fact and thus a jury question regarding probable cause, I would reverse the district court's grant of summary judgment to Officer Kilgore on Straub's § 1983 claim for false arrest and reinstate Straub's state-law claims falling within the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Accordingly, I respectfully dissent.